# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

KATHLEEN "KATIE" BURNETT, and
TYLER LALICKER,

    *Plaintiffs*,

v.

TEAGAN RASMUSSEN

    *Defendant*.

## COMPLAINT

COME NOW YOUR PLAINTIFFS, Kathleen "Katie" Burnett and Tyler Lalicker, jointly and severally, and move this Court to adopt and enforce the consent injunction ordered against Defendant Teagan Rasmussen by the US District Court for the Eastern District of Virginia, and for damages for defamation against Defendant Rasmussen, as follows:

    1.    Kathleen "Katie" Burnett is an adult over the age of 18 and resident of Fairfax County, Virginia (hereinafter also, "Plaintiff" or "Party") .

    2.    Tyler Lalicker is an adult over the age of 18 and resident of Fairfax County, Virginia (hereinafter also, "Plaintiff" or "Party") and is married to Katie Burnett.

    3.    Teagan Rasmussen is an adult over the age of 18 and resident of Arapahoe County, Colorado. (hereinafter also, "Defendant" or "Party")

    4.    This Court has jurisdiction in this matter under 28 USC §1332 as there is complete diversity of citizenship between all the Plaintiffs, as residents of Virginia, and the Defendant, as a resident of Colorado.

    5.    This Court also has jurisdiction of this matter as the amount in damages

sought, as discussed infra, exceeds $75,000.

6.     This Court also has jurisdiction under 28 USC §1331 as the Plaintiffs are requesting the adoption and enforcement of an injunction issued by another Federal court.

7.     This Court is the appropriate and convenient forum for this matter as the Defendant is present in the District.

### I.     BACKGROUND

8.     Plaintiffs and Defendant are mutual acquaintances who connected through a common interest in collectible pins.

9.     Plaintiffs and Defendant follow and participate in numerous social media platforms dedicated to collectible pins that have audiences in some cases of tens of thousands of people.

10.    Plaintiffs and Defendant have communicated numerous times through a number of social media platforms.

11.    Defendant Rasmussen moved from Louisiana to Denver, Colorado in approximately May 2021, and became involved in a custody dispute with the birth mother of their child, who still resides in Louisiana.

12.    Defendant Rasmussen believed that Plaintiffs had inserted themselves into the custody dispute and were somehow communicating with Louisiana courts to give evidence against Rasmussen.

13.    On or about October 12, 2022, Defendant Rasmussen sent a threatening message to Katie Burnett, intimating that Tyler Lalicker, who is Katie Burnett's husband, is a criminal working for a government contractor.

14.    On November 2, 2022, counsel for Plaintiffs sent a cease-and-desist letter to Defendant Rasmussen, warning them to stop any communications with or about

Plaintiffs.

15. Defendant Rasmussen responded the same day, stating that "there is no question about it I will not be publishing anything as I already haven't."

16. Then, throughout December, Defendant Rasmussen began a campaign of threats and defamation against Plaintiffs.

17. December 12, 2022, Rasmussen posted a message to Plaintiff Burnett "SO good to see you smile!!! Can't wait to fuck it up."

18. On December 13, 2022, Rasmussen posted a message on Rasmussen's Facebook page stating, "and then katie [sic] Burnett and Tyler decided to get involved and screenshot literal lies that Kristina cleared up later."

19. On December 20, 2022, Rasmussen posted on Facebook, "A little compassion and empathy goes a long way. Sam okee, kaya love, Karrisa Lawrence, katie [sic] Burnett, Tyler lackliter [sic], Karen rahn, Devyn van schagen: you all should feel the fucking worst. You betrayed a friend."

20. Also on December 20, 2022, Rasmussen posted on Facebook a screen shot of counsel's cease and desist letter sent November 2, 2022, and wrote, "OK this one was really good Katie and Tyler. I got a huge laugh out of the claim I was "slandering" you on social media while I literally had none. That's fine, bring the lawsuit on!! I have hundreds of messages implicating you in facilitating multiple high level crimes and telling government secrets. Let's go then! @tyler lackliter [sic] and @katieburnett. People will dig so deep to hide their own lies. This is who you trust running a pin group? Your website? Government security?"

21. On Wednesday, December 28, Rassmussen wrote on Facebook, "However if you care about Sam O., Karen Rahn, Devyn Van whatever the fuck, Dylan

Smith, Katie whatever her name is and Tyler Lackliter, [sic] along with every other person who I have plenty of illegal documents on (including under the table money laundering) yeah I'm talking about all of you pinners now, admission to large shipments of molly, x, weed, acid, mushroom S, etc across state lines, relinquishing of government secrets, large scale tax evasion, fraud, assaults, you name it, and really just having to listen to me bitch of the rest of their lives…"

22. On March 15, Rasmussen posted on Facebook, referring to an anti-kidnapping bill introduced in the Florida legislature, "I want the whole world to know that @alaina Fotenot @christy Fotenot @john fusilier @caddo parish @shreveport louisiana @neal lathem Karisa Lawrence Samwise Ochobee @kay rahn Tyler Lalicker @katie lalicker @devyn van whatever the fuck and anyone else who aided in the illegal taking of my child helped put this bill into action"

23. All of these social media posts about Plaintiffs were untrue, made intentionally to harm the reputation of the Plaintiffs, and made with malice.

24. These statements are demonstrably and provably false.

25. Plaintiffs are not public figures under Colorado law.

26. The matters asserted are not matters of public interest or general concern, or in the alternative if found as a matter of law to be matters of public interest or general concern, they are made with legal malice.

27. Defendant made these statements knowing they were false, or with reckless and malicious disregard for the truth.

28. These statements damage the good name and reputations of Plaintiffs as they impugn Plaintiff's fitness to conduct their trades, accuse Plaintiffs of committing crimes, including money laundering, distribution of narcotics, tax evasion, perjury and

compromise of Government secrets and accuse Plaintiff's otherwise of knowing prevarication.

29. There is no legal or equitable privilege Defendant may assert, and the statements are not factually true, in fact, are provably false.

30. These statements are all defamation per se.

31. These statements were made with malice, to frighten, intimidate, and injure Plaintiffs' business and personal reputations.

32. Plaintiffs Kathleen "Katie" Burnett and Tyler Lalicker initiated suit against Defendant in the US District Court for the Eastern District of Virginia (EDVA) by filing a complaint for defamation against Defendant on April 14, 2023, case 1:23-cv-00503.

33. The matter was resolved when the EDVA Court entered a consent decree permanently enjoining Defendant from making or publishing defamatory comments of any nature against the Plaintiffs on September 19, 2023.

34. Plaintiffs opted not to pursue money damages at that time as they simply wanted Defendant to stop defaming them, and the consent injunction would have the weight of the Federal Court system behind it.

35. Although Defendant signed the consent order for permanent injunction, Defendant has subsequently published statements to the effect that Defendant will not honor "out of state" court orders.

36. Defendant is flouting the authority of the United States Federal Court system, and flagrantly violating the injunction.

37. On November 1, 2023, Defendant wrote an email to counsel for Plaintiffs alleging that Plaintiffs had violated the Consent Order and threatened to file suit in

Colorado against them for defamation. Exhibit 1

38. On November 1, 2023, Counsel for Plaintiffs responded and outlined a series of legal actions that would be taken in the event Defendant did file a frivolous lawsuit against Plaintiffs in Colorado. Exhibit 2.

39. On November 2, 2023, Defendant posted on Facebook a screen shot of an email written by Defendant in response to counsel for Plaintiffs, which states, in part, "Feel free to bring whatever, as their lies have already wrecked my life and know that there is potential for a civil suit on my end for libel, slander and harassment for false statements made resulting in damages exceeding $15,000 at this point."[1] Exhibit 3.

40. Publishing the email on Facebook that alleges provably false facts - that Plaintiffs lied and committed libel, slander and harassment, is defamation in violation of the September 19, 2023, Consent Order.

41. On or about October 31, 2023, Defendant published Exhibit 4 on Facebook, which reposts a picture of the Plaintiffs along with Plaintiff Lalicker's mothers. Under the screen name "Muhs Room," Defendant published "Do you see what you have done to me? Do you see the constant defamation? You fucking losers have a 900,000 house and are fine you could have left me alone and not lied."

42. This is a statement about the Plaintiffs and was published on Facebook.

43. The statement is defamatory per se – that Plaintiffs themselves committed defamation and lied. Both statements are provably false.

44. Plaintiffs are not public figures, and these statements are not about a

---

[1] A Facebook post a few minutes later on November 2, 2023, by Defendant explains Defendant's intent to violate the injunction established by the Consent Order: "absolutely no reason [I] should have to abide by ridiculous out of state orders when they are clearly despotic nepotistic and biased against me as a trans person."

matter of public interest or general concern.

45. Publishing that statement on Facebook that alleges the provably false facts that Plaintiffs committed and continue to commit defamation and that Plaintiffs lied, is itself defamation in violation of the September 19, 2023, Consent Order.

46. On or about November 1, 2023, in another Facebook post under the screen name "Muhs Room," Defendant published the statement, "It's funny, the reason my lawsuit with katie and Tyler almost didn't settle? Because they wouldn't apologize for lying lol." Exhibit 5.

47. Publishing that statement on Instagram alleging the provably false facts that Plaintiffs lied, is defamation in violation of the September 19, 2023, Consent Order.

48. This is a statement about the Plaintiffs and was published on Facebook.

49. The statement is defamatory per se – that Plaintiffs themselves committed defamation and lied. Both statements are provably false.

50. Plaintiffs are not public figures, and these statements are not about a matter of public interest or general concern.

51. Defendant made the post knowing it was false or with reckless disregard for the truth.

52. Publishing that statement on Facebook that alleges the provably false facts that Plaintiffs committed and continue to commit defamation and that Plaintiffs lied, is itself defamation in violation of the September 19, 2023, Consent Order.

53. On or about November 6, 2023, Defendant posted the following statement on the website "techcrunch.com" in response to a posting by the Company "Splunk," which is a major software developer and with whose products Plaintiff Katie Burnett works on a daily basis: "What's the difference between ransom and "legally" using a

SLAPP case (unethically) to attempt to pull $500,00 away from a transgendered disabled individual? Ask Katie Burnett. See Exhibit 6.

54. This statement was posted generally to the internet on the website "techcrunch.com", "tagged" Plaintiff specifically, and accused Plaintiff of using a SLAPP case in an unethical manner akin to demanding ransom.

55. This statement is not of opinion but a provably false statement that Plaintiff unethically engaged in litigation and equated that litigation to a demand for ransom.

56. Katie Burnett is not a public figure, and this is not a topic in the public interest or of general concern.

57. Defendant made the post knowing it was false or with reckless disregard for the truth.

58. This statement was specifically aimed at colleagues of Katie Burnett in her trade and was intended to damage her reputation with its false allegations.

59. Publishing that statement on Facebook that alleges the provably false facts that Plaintiffs engaged in unethical litigation is itself defamation in violation of the September 19, 2023, Consent Order.

60. On or about November 7, 2023, Defendant posted the following statement on Facebook. "Tell Tyler and katie they are violating their own fucking legal judgement every single time you comment." Exhibit 7.

61. Publishing that statement on Facebook alleging the provably false facts that Plaintiffs were violating a court order is defamation in violation of the September 19, 2023, Consent Order.

62. This is a statement about the Plaintiffs and was published on Facebook.

63.     The statement is defamatory per se – that Plaintiffs themselves committed defamation and violated a court order. Both statements are provably false.

64.     Plaintiffs are not public figures, and these statements are not about a matter of public interest or general concern.

65.     Defendant made the post knowing it was false or with reckless disregard for the truth.

66.     On or about November 14, 2023, Defendant posted Exhibit 8 on Facebook.

67.     Defendant posted a "review" of Executive Law Partners, PLLC, stating "The head of the company, Milton Johns, is a FRAUD, He is willing to file a false police report just to clear his name despite numerous warnings that people needed to stop. – 10/10."

68.     The next statement made in the same posting says, "Katie and Tyler you are part of this conspiracy along with likely your mother, katie. You all may want to just settle with me or we can keep this going but I'm calling the police on everyone at this point. And filing civil charges as well this is clearly a RICO case and I am very over your bullshit."

69.     This statement that specifically names the Plaintiff is defamatory per se, as it accuses them of participating in a criminal conspiracy that rises to the level of enforcement under the Racketeer Influenced and Corrupt Organizations (RICO) act.

70.     This is a factual statement of criminal conduct that is false and provably false.

71.     Defendant made the post knowing it was false or with reckless disregard for the truth.

72. These statements are not about a matter of public interest or general concern and is in violation of the September 19, 2023, Consent Order.

73. On or about November 15, 2023, Defendant posted Exhibit 9. Among the statements made in Defendant's diatribe are "And now I can prove they committed actual fraud…" clarifying that "This applies to: alaina, katie, Tyler, Sam or Smobee, his sister or mom…"

74. This statement but is not opinion as Defendant states that Defendant can "prove they committed actual fraud."

75. This statement is defamatory per se as it makes a factual allegation of Plaintiffs committing fraud.

76. The statement is false, provably false, and specifically identifies both Plaintiffs.

77. Defendant made the post knowing it was false or with reckless disregard for the truth.

78. This statement is not a matter of public interest or of general concern and is in violation of the September 19, 2023, Consent Order.

79. On or about November 23, 2023, Defendant posted a statement on LinkedIn, depicted at Exhibit 10. "Frauds. I don't know who did it or why by Katie and Tyler I tried everything with you. These aren't real places, some are just templates. If you had a job? If you had a house and money? It is going to cost you one hell of a lawyer to get out of this. You made up a lawyer being added to the bar here? I called the association and filed a report they have no idea who I was talking about. All to cover up a fucking lie and ruin my reputation. You all know where to reach me you can stop this now but not without me getting my life and my child back I'm reporting your illegal

fraudulent actions anyway, but you could maybe fix it in the civil sphere. I hope it was worth it."

80. This statement is defamatory per se as it accuses Plaintiffs of committing "illegal fraudulent activities" and "covering up a …lie."

81. This statement is false and provably false.

82. Defendant made the post knowing it was false or with reckless disregard for the truth.

83. This statement is not in the public interest or of general concern and is in violation of the September 19, 2023, Consent Order.

84. On or about December 3, 2023, Defendant Rasmussen, posting Exhibit 11 on Facebook under the account name "Muhs Room."

85. The posting specifically identifies Plaintiffs.

86. The post makes the following factual statements that are provably false. "I can't believe the amount of undue hardship you have put on me and my family for what just because you couldn't handle that you lied?? That's fine. The FBI can deal with it now."

87. The post is defamatory per se as it accuses Plaintiffs of lying and of committing a crime within the jurisdiction of the Federal Bureau of Investigation.

88. The post is not in the public interest or of a general concern and is in violation of the September 19, 2023, Consent Order.

89. The post also makes the following provably false statement. "This is what you defended? Tax fraud, fraud, potential treason, harassment, bullying…"

90. The statement clearly refers to Plaintiffs and attributes to them acts of tax fraud, fraud, and potential treason, which are defamatory per se and provably false.

91. Defendant made the post knowing it was false or with reckless disregard for the truth.

92. The statement is not in public interest or of general concern and is in violation of the September 19, 2023, Consent Order.

93. On or about December 15, 2023, Defendant posted Exhibit 12 on the LinkedIn paged of "Splunk.com."

94. Splunk is a major cyber security software provider, whose products are used regularly in the field of cybersecurity, in which both Plaintiffs make their living.

95. The original post by Splunk discusses the company's participation in the "AWSReinvent" conference in Las Vegas to be held in December 2023.

96. Defendant's post has nothing to do at all with Splunk participating in the conference, but simply is a malicious attack against Plaintiffs published where it would gain maximum visibility among their peers in cybersecurity.

97. The post makes the following provably false statements: "I wonder how the court will feel knowing someone figured out that one of your engineers used this system to threaten and harass an individual for months, with a continued decree to do so…Her name is Kathleen, katie, Burnett. Her and Tyler Lalicker used your systems to hack, harass, defame, and destroy an individual. And I guess I will have to hold your company responsible if I do not get answers as to what this was okay."

98. The post is defamatory per se as it accuses Plaintiffs of committing crimes and misconduct to include threatening and harassing an individual, and also using Splunk software platforms to "hack, harass, defame and destroy" an individual.

99. Accusing a cybersecurity software professional of unethical and illegal conduct such as hacking in and of itself can destroy the reputation and career of that

professional.

100. The post is a direct attack on the professional reputation of the Plaintiffs in a forum to cause the greatest possible damage among their peers in the industry.

101. These statements are not in the public interest or of general concern is in made violation of the September 19, 2023, Consent Order,

102. Defendant made the statements knowing they were false, or with a reckless disregard for truth.

103. Defendant continues unchecked to make vicious, false, and professionally damaging statements about Plaintiffs and a wide variety of other professionals and acquaintances.

## II. PERMANENT INJUNCTION

104. Plaintiff's re-allege paragraphs 1 through 103.

105. This Court has personal and subject matter jurisdiction to enter a permanent injunction in this matter.

106. The permanent injunction issued in the EDVA case was achieved by consent of the parties.

107. This Court has personal jurisdiction to issue orders to compel compliance with the EDVA permanent injunction.

108. Article IV, Section I of the United States Constitution provides, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

109. The permanent injunction issued against the Defendant in EDVA is a final

judgment of that court.

110. This Court may take judicial notice of the EDVA permanent injunction and its proscriptions.

111. Defendant's serial and malicious violation of the EDVA permanent injunction exacts inequity against Plaintiffs and continues to inflict injury that Plaintiff sought to enjoin, and which Defendant agreed to cease.

112. Plaintiffs ask this Court to enter an order issuing its own permanent injunction enforcing the EDVA permanent injunction and to order Defendant to Show Cause why Defendant should not be held in contempt.

### III.   TORT DAMAGES

113. Plaintiff's re-allege paragraphs 1 through 112.

114. Defendant's statements, as detailed *supra*, constitute new and separate acts of defamation by Defendant against Plaintiffs subsequent to the entry of the EDVA permanent injunction, which were published to third parties, specifically, on a variety of social media platforms.

115. The statements are all defamatory per se, in that they impugn the Plaintiff's reputations in their trade or business and accuse Plaintiffs of crimes, fraud and prevarication.

116. The statements are provably false, and Defendant knew, or proceeded with reckless disregard for the truth, of the falsity of the statements.

117. Plaintiffs are not public figures.

118. The statements are not about matters in public interest or of general concern.

119. To the extent that any of the statements are in the public interest or of

general concern as a matter of law, they were published by Defendant knowing they were false or with reckless disregard for the truth.

120. Plaintiffs have suffered actual damages to include time spent trying to repair their reputation with colleagues, time and costs expended to try to block Defendant and to limit the technological reach of Defendant's character assassination campaign, in addition to significant emotional and psychological damage, embarrassment and stress.

121. Defendant on more than one occasion "tagged" work colleagues or employers of Plaintiffs to maximize the damage to Plaintiffs' reputations and insure maximum disruption in their respective professional careers.

122. For each instance of defamation identified *supra*, Plaintiffs ask this court for compensatory damages to be proved at trial, but in any case, at least $500,000, equal to at least $50,000 for each defamatory statement.

123. Plaintiffs ask this court for an award of punitive damages in an amount equal to the compensatory damages to be proven at trial, but in any case, at least $500,000, equal to at least $50,000 for each defamatory statement.

Wherefore, Plaintiffs Burnett and Lalicker, jointly and severally, asks this court for entry of a permanent injunction against Defendant enjoining Defendant's defamatory conduct, for an award of compensatory damages in the amount of $500,000, punitive damages in the amount of $500,000 and for any other relief the court deems appropriate.

Respectfully submitted,

Katie Burnett and Tyler Lalicker


By:  /s/  Milton C. Johns
Milton C. Johns, VSB No. 42305
Admitted, US District Court for District of Colorado
Executive Law Partners, PLLC
11130 Fairfax Blvd., Suite 303
Fairfax, VA 22030
(571) 500-1010 - phone
(571) 408-8102 – facsimile
mjohns@xlppllc.com
*Counsel for Plaintiffs*